**FIDELITY AND CASUALTY COMPANY OF NEW YORK**

v.

**Janet W. FRANK.**

**OCCIDENTAL LIFE INSURANCE COMPANY OF CALIFORNIA**

v.

**Janet Ellen Wagner FRANK.**

**Janet Ellen Wagner FRANK.**

v.

**INDEMNITY INSURANCE COMPANY OF NORTH AMERICA.**

**Janet Ellen Wagner FRANK**

v.

**FEDERAL LIFE AND CASUALTY COMPANY.**

**CONTINENTAL CASUALTY COMPANY**

v.

**Janet Ellen Wagner FRANK.**

**Nos. 8370, 8361, 8407, 8406, 8365.**

United States District Court
D. Connecticut.

March 23, 1964.

David Cohen, New York City, for plaintiffs.

Maurice Abrams, New York City, for defendants.

ANDERSON, Chief Judge.

This ruling is supplemental to the memorandum on the same evidential question dated and filed February 18, 1963 and reported in D.C., 214 F.Supp. 803.

The issue revolves around the use of investigative group reports made by subcommittees of the Civil Aeronautics Board and incorporated in whole or in part in the report of the Civil Aeronautics Board itself. The former ruling held

that, while 49 U.S.C. § 1441(e) prohibits the use in evidence of the C.A.B. report or any part of it, this does not mean that the investigative group or sub-committee reports are, as such, inadmissible, provided they qualify under the rules of evidence and further provided there is deleted therefrom anything in the nature of opinion, evaluation or conclusion testimony bearing upon the question of how the crash occurred.

■ After examining the proffered reports and exhibits the court has decided to amend, somewhat, its ruling of February 18, 1963. In that ruling the court said the "conclusions and opinions [in the investigative group reports] which are outside the area of the ultimate question may be admitted * * *"; this has proven to be more confusing than helpful and is deleted. If otherwise admissible, other parts of investigative reports would not be excluded simply because they were incorporated by reference or otherwise in the report of the C.A.B. itself. At the time of the former ruling, without the actual investigative group reports and exhibits before it, the court envisaged an area of conclusion and opinion evidence which would be admissible under some rule of evidence and which would not tend to bear upon how the crash occurred. A more workable and better rule is entirely to exclude all evaluation, opinion and conclusion evidence. This is the only practical way to give adequate effect to and fulfill the purpose of the provisions of § 1441(e). It is more nearly in line with Israel v. United States, 247 F.2d 426 (2 Cir. 1957) and Berguido v. Eastern Airlines, Inc., 317 F.2d 628 (3 Cir. 1963).

■ The court will not give an advisory opinion or rule in advance on specific offerings of evidence out of the context of the trial and thus make the trial more difficult. It has endeavored to state what it considers the applicable rules and statutes and how they should be used.

The court is aware, however, that a great deal is involved for both parties by way of expense, effort and time in preparing for the trial of this case and that something in the nature of a guideline, to give them some idea how the evidential rules above stated may be applied to the investigative group reports, might be helpful. These comments are not to be taken as an advance ruling, binding upon the trier of the case and are offered simply by way of academic discussion to illustrate what may be treated as fact and what may be regarded as conclusions.

§ 1 and § 2 of Part "C" entitled "Investigation" from "Operations Group Chairman's Factual Report of Investigation," Exhibit 2, November 4, 1963, deposition of David L. Thompson, are, for the most part, factual. However, certain parts might well be regarded as evaluation, opinion or conclusion evidence, for example, and without limitation, the following:

Page 12: "Investigation revealed that all crew members were regularly employed by National Airlines and were currently certificated and qualified for the operation involved."

Page 13: "A review of all ARTC records pertaining to National Flight 2511 reveals that the flight was handled in a normal manner and that progress was satisfactory and in accordance with standard accepted practices from taxi-take-off at Idlewild Airport to the last known ARTC position report over Wilmington, North Carolina."

Page 14: "A survey of the wreckage indicated that the aircraft had broken up in the air and had fallen to the ground in several large pieces. The forward section of the fuselage had broken free of the remaining portion of the fuselage at a point just aft of the lavatory section and fell to the ground right-side up with little forward motion."

Page 14: "The cockpit section of the aircraft suffered extreme impact damage."

Page 16: There might be deleted from the last paragraph of § 2 as conclusory

the words, "The time of the accident was taken from * * *" and "Inspection revealed that the clock had stopped on impact and offers the most reliable time for the occurrence of the accident" leaving as factual the words "the captain's instrument panel clock * * * was found in the cockpit section of the wreckage broken free of its mount on the panel."